Eva M. WILDMAN, Respondent,

v.

K–MART CORPORATION, a foreign corporation, Respondent,

Clean Sweep, Inc., Appellant.

No. C8–96–1265.

Court of Appeals of Minnesota.

Dec. 10, 1996.

Review Denied Jan. 29, 1997.

Marianne Settano, Roseville, for Appellant.

Thomas J. Niemiec, Mark R. Whitmore, Bassford, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Respondent K–Mart Corporation.

Mark M. Nolan, Stapleton, Nolan & McCall, P.A., St. Paul, for Respondent Wildman.

Considered and decided by AMUNDSON, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

HUSPENI, Judge.

The district court granted summary judgment to respondent, holding that an insurance coverage dispute between a nonsettling defendant and an insurer is properly resolved in a declaratory judgment action. Because we see no abuse of discretion, we affirm.

## FACTS

This appeal, in essence, involves a dispute between a plaintiff and a tortfeasor's insurance company. After the plaintiff, respondent Eva Wildman, fell on ice in the parking lot of respondent K–Mart, she brought an action against K–Mart and appellant Clean Sweep, the snow removal service that had contracted to remove ice and snow from K–Mart's parking lot. Clean Sweep had a general liability policy with Milwaukee Mutual Insurance Company (Milwaukee) on which

K–Mart was listed as an additional insured.[1] Whether Milwaukee's coverage extended to K–Mart's independent negligence or only to the negligence of Clean Sweep imputed to K–Mart is disputed; that dispute has affected both the *Pierringer* release Wildman entered into with Clean Sweep and the *Miller–Shugart* agreement she entered into with K–Mart.

### The *Pierringer* release

Clean Sweep's attorney (who was actually provided by Milwaukee, Clean Sweep's insurer), and Wildman's attorney negotiated a *Pierringer* release, reading in part:

In consideration of the payment of Fifty Thousand Dollars ($50,000.00), the receipt of which is hereby acknowledged, Eva Wildman forever discharges and releases Clean Sweep, Inc., Eugene Hansen, Kmart Corporation for any and all imputed liability as a result of Clean Sweep, Inc.'s negligence, and Milwaukee Mutual Insurance Company, * * * subject to the following qualifications:

1. It is expressly understood and agreed that this release is made as a compromise settlement of the aforesaid claims, demands, and causes of action against Clean Sweep, Inc., Eugene Hansen, Kmart Corporation for any and all imputed liability as a result of Clean Sweep, Inc.'s negligence, and Milwaukee Mutual Insurance Company and that the consideration paid for this release is less than the total value or amount of damages claimed as a result of the alleged injuries to Eva Wildman and does not constitute a full payment therefor. * * *

2. It is further expressly understood and agreed that Eva Wildman reserves to herself and preserves the balance of the total claims, demands and causes of actions against any and all persons and parties other than Clean Sweep, Inc., Eugene Hansen, Kmart Corporation for any and all imputed liability as a result of Clean Sweep, Inc.'s negligence, and Milwaukee Mutual Insurance Company * * *.

---

1. Clean Sweep had listed K–Mart as an additional insured because the contract between them required Clean Sweep to "maintain comprehensive general liability insurance" and "include Kmart as an additional named insured in connection with all coverages * * *."

Clean Sweep's attorney wrote a letter to Wildman's attorney confirming the release.

> It is my understanding that your client, Eva Wildman, will accept $50,000.00 in exchange for a Pierringer Release of my client, Clean Sweep, Kmart in regard to any imputed liability due to the alleged negligence of Clean Sweep, and Milwaukee Insurance Company. It is my understanding that you will be continuing to pursue your lawsuit against Kmart for their individual negligence.

### The *Miller–Shugart* agreement

A few days later, K–Mart told Wildman that K–Mart was a named insured on Clean Sweep's Milwaukee policy, that Milwaukee had denied coverage to K–Mart for K–Mart's negligence, and that K–Mart wanted to enter into a *Miller–Shugart* agreement with Wildman. That agreement was entered. It provided that K–Mart agreed to a $150,000 judgment in favor of Wildman and that Wildman would satisfy the judgment from the proceeds of the declaratory judgment action brought by K–Mart against Milwaukee.

Wildman's attorney said in an affidavit that K–Mart "also agreed to take the laboring oar in pursuing the declaratory judgment action for a declaration of coverage." The *Miller–Shugart* agreement stated in part:

> The parties agree that Kmart shall initiate and reasonably prosecute a declaratory judgment action against Milwaukee Mutual seeking to establish coverage under the Milwaukee Mutual policy for Kmart and to specifically establish coverage under the Milwaukee Mutual policy for Kmart and to specifically establish coverage for the claims of negligence which Wildman has asserted against Kmart in this action. Kmart agrees that it will not settle or dismiss this declaratory judgment action without written approval from Wildman.

The *Miller–Shugart* agreement was thus atypical in providing that the tortfeasor, not the plaintiff, would bring an action against the insurer.[2]

Clean Sweep sent Wildman a copy of the *Pierringer* release, two drafts for $25,000 each, and a letter asking that the drafts not be negotiated until the release was executed. Wildman then told Clean Sweep she would not sign the release unless it was amended to include this paragraph:

> The release of Milwaukee Mutual Insurance Company herein goes only to its obligation to indemnify Clean Sweep, Inc. for its negligence and Kmart for negligence of Clean Sweep, Inc. imputed to it. No release of Milwaukee Mutual Insurance Company of its obligation, if any, to indemnify Kmart Corporation for Kmart Corporation's own negligent conduct relative to the above described accident is intended.

Clean Sweep refused the amendment to the release and payment on the drafts was stopped.

Wildman and Clean Sweep then brought cross-motions for summary judgment in this action. Clean Sweep argued that Wildman, having released Milwaukee in a *Pierringer* release, could not subsequently accept assignment of the right to pursue Milwaukee in a *Miller–Shugart* agreement, and asked the court to enforce the original unmodified *Pierringer* release. Wildman and K–Mart argued that the *Pierringer* release applied only to Milwaukee's obligations to indemnify Clean Sweep, and to indemnify K–Mart for Clean Sweep's imputed negligence; it did not extend to any obligation Milwaukee might have to indemnify K–Mart for K–Mart's independent negligence. Wildman and K–Mart asked the court to enforce the amended *Pierringer* release with the added paragraph clarifying the limits on Wildman's release of Milwaukee. The court issued an order and a partial judgment requiring Clean Sweep to pay Wildman $50,000 and to sign the modified release. Clean Sweep appeals.

### ISSUE

Does a *Pierringer* release of one co-defendant and its insurer operate to release that

---

2. At the time this appeal was briefed, the declaratory judgment action brought by K–Mart against Milwaukee was pending in Dakota County District Court.

same insurer with respect to a nonsettling defendant insured on the same policy? [3]

## ANALYSIS

### Standard of Review

■ The trial court acts as a finder of fact in disputes concerning pretrial settlements. *Jallen v. Agre*, 264 Minn. 369, 373, 119 N.W.2d 739, 743 (Minn.1963). Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous. Minn.R.Civ.P. 52.01.

> The basic elements of a Pierringer release are: (1) The release of the settling defendants from the action and the discharge of a part of the cause of action equal to that part attributable to the settling defendants' causal negligence; (2) the reservation of the remainder of plaintiff's causes of action against the nonsettling defendants; and (3) plaintiff's agreement to indemnify the settling defendants from any claims of contribution made by the nonsettling parties and to satisfy any judgment obtained from the nonsettling defendants to the extent the settling defendants have been released.

*Frey v. Snelgrove*, 269 N.W.2d 918, 920 n. 1 (Minn.1978) (citing John Simonett, *Release of Joint Tortfeasors: Use of the Pierringer Release in Minnesota*, 3 Wm. Mitchell L.Rev. 1, 3, 8, notes 32 and 33 (1977)). Wildman released Clean Sweep, K–Mart for imputed liability for Clean Sweep's negligence, and Milwaukee; she reserved her cause of action against K–Mart for its independent negligence.

■ Clean Sweep's attorney said at the trial court hearing:

> [T]he settlement entered into between Eva Wildman and Clean Sweep does not affect Kmart's right to pursue Milwaukee for coverage. What it does affect is Eva Wildman's rights to take an assignment from Kmart and pursue coverage against Milwaukee.

In view of this statement, we conclude that Clean Sweep's strong objection to the added paragraph implies a belief that the paragraph abrogates Wildman's release of Milwaukee and gives Wildman an action she would not otherwise have had. However, Wildman did not release her claim against K–Mart for its independent negligence, and Clean Sweep's attorney, a Milwaukee employee, stated clearly that K–Mart has a right to pursue Milwaukee for coverage. That coverage, in the context of this case, could be only in regard to Wildman's claims against K–Mart. We can discern no basis upon which Wildman's rights against Milwaukee could exceed K–Mart's rights against Milwaukee, nor can we discern in the contested paragraph any restoration of rights to Wildman that she had relinquished elsewhere in the release.

As Clean Sweep's attorney noted, K–Mart's right to pursue Milwaukee was not affected by the *Pierringer* release. K–Mart's right to assign or exchange that right was similarly unaffected. While Clean Sweep's attorney argues that Wildman's right to accept such an assignment or exchange was affected by the *Pierringer* release, we can discover no support or logical basis for this view.

Through the *Miller–Shugart* agreement, Wildman exchanged her undisputed right to pursue K–Mart individually for the assignment of the proceeds of K–Mart's declaratory judgment against Milwaukee. The paragraph added to the *Pierringer* release does no more than ensure K–Mart's right to bring this declaratory judgment action; it does not mandate Milwaukee's coverage of K–Mart's. independent negligence, and it does not give Wildman additional rights against Milwaukee.

The fact that the policy involved in the *Pierringer* release is the same policy involved in the *Miller–Shugart* agreement may appear to be a complicating factor, but it should not be. Milwaukee does not dispute coverage under this policy for K–Mart's imputed negligence; that imputed negligence was a subject of the *Pierringer* release. Mil-

---

3. We recognize that K–Mart was a nonsettling defendant only in terms of its own independent negligence; under the *Pierringer* release, K–Mart was a settling defendant regarding any imputed negligence.

waukee does dispute any coverage for K–Mart's independent negligence. This issue cannot be resolved on a summary judgment motion in an action between Clean Sweep and Wildman; it must be decided in the declaratory judgment action now pending between K–Mart and Milwaukee.

Clean Sweep also argues that if the district court declined to enforce the unmodified *Pierringer* release, it should have found that there was no agreement between Clean Sweep and Wildman and set the matter for trial. However, Clean Sweep does not deny that the *Pierringer* release of Clean Sweep by Wildman was a valid and enforceable agreement; the promptness with which Clean Sweep issued the drafts provides corroborative evidence of this.

## DECISION

 The district court did not abuse its discretion in holding that the *Pierringer* release of one defendant did not operate to release the putative insurer of a nonsettling defendant.

**Affirmed.**